IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,971

DAVID A. NOYCE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

SYLLABUS BY THE COURT

1.

K.S.A. 60-1507 places a time limit on the filing of a motion under that statute. For inmates whose claims accrued prior to the enactment of the statutory amendment establishing the time limit, the deadline for filing a 60-1507 motion was June 30, 2004.

2.

The time limit for filing a K.S.A. 60-1507 motion may be extended beyond the one-year deadline only to prevent manifest injustice, which is defined in this context as being obviously unfair or shocking to the conscience.

3.

A defendant generally waives an argument that a conviction is multiplicitous by pleading guilty to that charge.

4.

When a defendant challenges the effectiveness of trial counsel with respect to a charge to which the defendant pled guilty, the defendant must show not only that

1

counsel's performance was deficient, but also that, but for counsel's unreasonably deficient performance, the defendant would not have entered a plea but would have insisted on going to trial.

Review of the judgment of the Court of Appeals in an unpublished opinion filed July 21, 2017. Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion filed August 23, 2019. Judgment of the Court of Appeals affirming in part and reversing in part the district court is reversed. Judgment of the district court is affirmed.

*Michael P. Whalen* and *Krystle M.S. Dalke*, of Law Office of Michael P. Whalen, of Wichita, were on the brief for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: The State of Kansas petitions this court for review of the Court of Appeals' decision reversing the summary denial of David A. Noyce's untimely K.S.A. 60-1507 motion. The Court of Appeals held Noyce had shown that an extension of the one-year time period to file his motion was necessary to prevent a manifest injustice on two issues. The State's petition for review argues the Court of Appeals erred by applying incorrect legal standards in evaluating manifest injustice, thereby resulting in an erroneous determination that Noyce's motion established the requisite manifest injustice.

Given the unique circumstances of this capital murder case, we reverse the Court of Appeals and affirm the district court's summary denial of Noyce's untimely motion.

2

In 1998, the State filed a complaint charging Noyce with capital murder, premeditated first-degree murder, and aggravated arson. The State alleged that on September 14, 1998, Noyce set fire to a residence, which resulted in the deaths of his wife, Dalene Noyce, and two-year-old son, C.N. The first-degree murder charge stemmed from C.N.'s death, and the capital murder charge alleged the killing of both Dalene and C.N. as part of the "same act or transaction or two or more acts or transactions connected together or constituting parts of a common scheme or course of conduct."

In February of 1999, Noyce pled guilty as charged and the State agreed not to seek the death penalty against Noyce. With respect to sentencing, the parties agreed to recommend two consecutive life sentences with mandatory minimums of 40 years' imprisonment each (hard 40) for the murders, to be served consecutive to the aggravated arson sentence. The district court accepted the recommended sentences in the parties' plea agreement. Noyce did not appeal.

In November 2013, Noyce filed a pro se motion to correct an illegal sentence under K.S.A. 22-3504, arguing his first-degree murder sentence was illegal because the capital murder and first-degree murder convictions both punished him for killing C.N. In legal parlance, Noyce argued his convictions for killing C.N. were multiplicitous. *State v. Noyce*, 301 Kan. 408, 409, 343 P.3d 105 (2015) (*Noyce I*). The district court summarily denied Noyce's claim.

Noyce appealed and for the first time also challenged his hard 40 sentences as being unconstitutional under *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013). This court held that the district court reached the correct result because multiplicity and *Alleyne* claims cannot be raised through a motion to correct an

illegal sentence. *Noyce I*, 301 Kan. at 410. We further held that Noyce's 22-3504 motion could not be saved by construing it as a motion under K.S.A. 60-1507 because Noyce's brief expressly stated he was not arguing under K.S.A. 60-1507, and because Noyce had not demonstrated manifest injustice to allow him to bring an untimely 60-1507 motion. 301 Kan. at 410.

Shortly after this court issued its opinion on Noyce's 22-3504 motion, Noyce filed his 60-1507 motion, which is the subject of this appeal. Noyce alleged numerous instances of ineffective assistance of counsel, which are summarized in the Court of Appeals' opinion. *Noyce v. State*, No. 114,971, 2017 WL 3112821, at *2 (Kan. App. 2017) (unpublished opinion) (*Noyce II*). At this juncture, two of Noyce's ineffective assistance of counsel claims are before this court.

First, Noyce acknowledged that his claims should have been dealt with on direct appeal but alleged his defense counsel, Ronald Evans, chief attorney of the State of Kansas Death Penalty Defense Unit, and the judge told him he could not appeal a plea bargain. He also attached his plea bargain, which advised him that the appellate court would not review a sentence agreed to in a plea agreement. Second, Noyce argued Evans was ineffective for not informing him of a multiplicity issue with his murder convictions and in failing to file multiplicity motions on his behalf.

Noyce additionally discussed legal and factual developments in 2013, in an apparent attempt to excuse his delayed filing. Legally, he claimed he discovered his "sentence was unconstitutional" after *Astorga v. Kansas*, 570 U.S. 913, 133 S. Ct. 2877, 186 L. Ed. 2d 902 (2013), was announced. See 570 U.S. at 913 (remanding hard 50 sentencing case to this court for further consideration in light of *Alleyne*). Factually, he claimed he discovered that Evans "was the counsel in *State v. Scott*[, 286 Kan. 54, 183 P.3d 801 (2008), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d

4

332 (2016),] and in that case, tried before movant's, . . . multiplicity motions and KSA 21-3107 motions had been filed." See K.S.A. 21-3107 (multiple prosecutions for the same act; lesser included crimes). Noyce said he learned that Evans had not filed such motions on his behalf when he obtained a copy of the filings from his case.

As to relief, Noyce sought to vacate his convictions with prejudice "due to ineffective assistance of counsel, a manifest injustice" and because he suffered the prejudice of "an unknowing plea bargain into a sentence that violated KSA 21-3107 as well as the Fifth Amendments [*sic*] protections against multiplicity." Noyce recognized that his requested relief was unusual but argued his case was unusual in light of collusion among his counsel, the district attorney, and the district court.

When the State did not respond to his motion, Noyce filed a motion for summary judgment. Thereafter, the State responded and the district court summarily denied the motion. The district court found that Noyce did not present manifest injustice to overcome the applicable time bar.

Noyce appealed to the Court of Appeals and argued that the district court violated his due process rights when it failed to appoint counsel to represent him after receiving the State's formal response. Alternatively, Noyce argued he showed manifest injustice warranting review of his petition.

The Court of Appeals held the district court did not violate Noyce's due process rights by failing to appoint counsel for Noyce. *Noyce II*, 2017 WL 3112821, at *4-5. But the panel held that the district court erred in summarily denying Noyce's motion. In evaluating manifest injustice, the panel rejected the State's claim that the 2016 amendments to K.S.A. 60-1507(f) should apply retroactively to Noyce's motion. Instead, the panel held that *Vontress v. State*, 299 Kan. 607, 325 P.3d 1114 (2014), *superseded by*

5

*statute as stated in White v. State*, 308 Kan. 491, 421 P.3d 718 (2018), applied. *Noyce II*, 2017 WL 3112821, at *7. After considering the three nonexclusive factors for evaluating manifest injustice under *Vontress*, the Court of Appeals held Noyce had shown that extension of the one-year time period for filing his motion was necessary to prevent a manifest injustice on two issues: "(1) Did Noyce's attorney provide ineffective assistance of counsel in advising the defendant he could not appeal his convictions and sentences?" and, "(2) Did Noyce's counsel provide ineffective assistance of counsel by failing to advise him that his guilty plea to premeditated murder under the circumstances would result in a multiplicitous conviction for the premeditated murder of [C.N.]?" *Noyce II*, 2017 WL 3112821, at *11. The panel remanded for an evidentiary hearing with appointed counsel on those two issues. The panel rejected the remainder of Noyce's ineffective assistance of counsel claims. 2017 WL 3112821, at *11.

The State petitioned this court for review. This court has jurisdiction under K.S.A. 20-3018(b), providing for petitions for review of Court of Appeals' decisions.

Noyce did not cross-petition for us to consider his arguments that the Court of Appeals rejected, nor did he respond to the State's petition. Therefore, we will not consider his due process argument or the ineffective assistance of counsel claims that the Court of Appeals rejected. See Supreme Court Rule 8.03(b), (c)(3), (h)(1) (2017 Kan. S. Ct. R. 53).

6

SUMMARY DENIAL OF THE K.S.A. 60-1507 MOTION

*Standard of Review*

The district court denied Noyce's motion without conducting a hearing. "When the district court summarily denies a K.S.A. 60-1507 motion, an appellate court conducts de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to any relief." *Wimbley v. State*, 292 Kan. 796, 804, 275 P.3d 35 (2011). "'"[A] movant has the burden to prove his or her K.S.A. 60-1507 motion warrants an evidentiary hearing; the movant must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record."'" *Holmes v. State*, 292 Kan. 271, 274, 252 P.3d 573 (2011).

*Analysis*

As the Court of Appeals recognized, there is no question that Noyce's motion is untimely. Noyce pled guilty in 1999 and did not appeal his convictions and sentences. *Noyce II*, 2017 WL 3112821, at *1. The one-year time limit in K.S.A. 60-1507 was added to the statute effective July 1, 2003. L. 2003, ch. 65, § 1. For movants, like Noyce, who had claims preexisting the statutory amendment, the deadline for filing a 60-1507 motion was June 30, 2004. See *Pabst v. State*, 287 Kan. 1, 22, 192 P.3d 630 (2008); *Noyce II*, 2017 WL 3112821, at *6. Noyce filed his motion on April 13, 2015, nearly 11 years after the statutory deadline. That 60-1507(f) time limit, however, "may be extended by the court only to prevent a manifest injustice." K.S.A. 60-1507(f)(2).

As a preliminary matter, the State argues that in evaluating manifest injustice, the Court of Appeals erred by relying on the *Vontress* analysis and instead should have

7

retroactively applied the 2016 amendments to K.S.A. 60-1507(f)(2). But after the State filed its petition, this court held that the 2016 legislative changes to 60-1507(f) do not apply retroactively. *White*, 308 Kan. at 498. Noyce's motion was filed on April 13, 2015; accordingly, the Court of Appeals correctly relied upon *Vontress* in evaluating whether Noyce established manifest injustice.

In *Vontress*, we stated "manifest injustice" in the context of habeas corpus means "'obviously unfair'" or "'shocking to the conscience.'" 299 Kan. at 614. We established a nonexhaustive list of factors for judges to consider in evaluating whether a movant has shown a manifest injustice, including whether:

> "(1) the movant provides persuasive reasons or circumstances that prevented him or her from filing the 60-1507 motion within the 1-year time limitation; (2) the merits of the movant's claim raise substantial issues of law or fact deserving of the district court's consideration; and (3) the movant sets forth a colorable claim of actual innocence, *i.e.*, factual, not legal, innocence." 299 Kan. at 616.

In evaluating these factors, "courts consider all factors under the totality of the circumstances rather than balancing factors against each other, need not give the factors equal weight, and should not consider any single factor dispositive." *White*, 308 Kan. at 504. The movant bears the "burden to establish manifest injustice by a preponderance of the evidence." *White*, 308 Kan. at 496 (citing Supreme Court Rule 183(g) [2018 Kan. S. Ct. R. 223]).

On the first factor, the Court of Appeals held Noyce raised a colorable claim to excuse his untimely filing based on his assertion that his counsel told him he could not appeal from a guilty plea. *Noyce II*, 2017 WL 3112821, at *8.

8

The Court of Appeals noted it was at a disadvantage in analyzing the first *Vontress* factor because the district court made no findings regarding defense counsel's advice to Noyce about "whether he could appeal his convictions or sentences, and whether he could make a postconviction attack on those convictions or sentences (and, if so, under what circumstances)." *Noyce II*, 2017 WL 3112821, at *8. The Court of Appeals also noted that the plea hearing and sentencing transcripts are not in the record on appeal, which "could [have] at least shed some light on what, if anything, the trial judge and defense counsel personally informed Noyce regarding these matters." 2017 WL 3112821, at *8. So the panel remanded for an evidentiary hearing to determine whether Noyce's counsel was ineffective in advising Noyce about his appeal rights. 2017 WL 3112821, at *9, 11.

On petition for review, the State argues that the panel should not have construed the paucity of the record in Noyce's favor, as Noyce had the burden to designate a record. The State's point is well taken. The transcripts of the plea hearing and sentencing may well have shed light on what Noyce was (or was not) told by counsel and the district court about his right to appeal; but it was Noyce's burden to provide that information to the appellate courts. See *State v. Reu-El*, 306 Kan. 460, 473, 394 P.3d 884 (2017) ("A court considering a motion to withdraw a plea should look at the entire plea process—the written plea agreement, if any, counsel's advice, and the plea colloquy—to see whether, when all aspects are considered, the defendant understands the nature and consequences of a plea."); *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015) ("A party asserting that prejudicial error has occurred has the burden of designating a record that affirmatively shows the error.").

The State further argues that even assuming trial counsel told Noyce he could not appeal his plea and sentence, that advice was not deficient under the circumstances. To

9

analyze this argument, we begin with the relevant statutes pertaining to Noyce's right to appeal. K.S.A. 22-3602(a) provides:

> "No appeal shall be taken by the defendant from a judgment of conviction before a district judge upon a plea of guilty or *nolo contendere*, except that jurisdictional or other grounds going to the legality of the proceedings may be raised by the defendant as provided in K.S.A. 60-1507, and amendments thereto."

And K.S.A. 22-3208(4) provides:

> "A plea of guilty or a consent to trial upon a complaint, information or indictment shall constitute a waiver of defenses and objections based upon the institution of the prosecution or defects in the complaint, information or indictment other than it fails to show jurisdiction in the court or to charge a crime."

Under these provisions, we have recognized that a defendant generally waives a double jeopardy argument by entering a plea. See *Reu-El*, 306 Kan. at 474-75 (noting under K.S.A. 2016 Supp. 22-3602[a] and 22-3208[4], defendant waives double jeopardy arguments by entering a no contest plea); *State v. Edwards*, 281 Kan. 1334, 1339-41, 135 P.3d 1251 (2006) (holding guilty plea "waives all nonjurisdictional defects," and "the idea that a court lacks jurisdiction to impose sentences for multiplicitous convictions is contradicted by the rule that a defendant who enters a voluntary plea of guilty waives the right to subsequently assert a double jeopardy attack on his or her sentences"); see also *United States v. Broce*, 488 U.S. 563, 569-76, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989) (holding guilty plea generally forecloses double jeopardy claim; setting out exceptions); *Thompson v. State*, 23 Kan. App. 2d 305, 308, 929 P.2d 803 (1996) ("Absent a claim of ineffectiveness of counsel, [movant's] argument that he did not knowingly and voluntarily waive his double jeopardy rights fails."); *State v. Glaze*, No. 95,323, 2007 WL

518979, at *2 (Kan. App. 2007) (unpublished opinion) (reasoning movant was not entitled to relief under 60-1507 because guilty plea waived multiplicity claim).

Granted, *Broce* opined that there were exceptions, to-wit:

"A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is *ordinarily confined to whether the underlying plea was both counseled and voluntary*. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack. There are *exceptions where on the face of the record the court had no power to enter the conviction or impose the sentence*." (Emphases added.) 488 U.S. at 569.

Here, Noyce does not convince us that any exceptions are applicable.

The State also argues that appellate courts would have been statutorily prohibited from considering challenges to Noyce's sentence in a direct appeal, because the parties agreed on the sentence and it was approved by the district court. K.S.A. 21-4721(c)(2) provides "the appellate court shall not review . . . any sentence resulting from an agreement between the state and the defendant which the sentencing court approves on the record." We have recognized that when K.S.A. 21-4721 applies, it limits an appellate court's jurisdiction "'to those grounds authorized by the statute *or a claim that the sentence is otherwise illegal.*'" *State v. Duncan*, 291 Kan. 467, 470, 243 P.3d 338 (2010). As noted above, the multiplicity of Noyce's two murder convictions did not render them illegal, as a matter of law, because that defect can be waived.

Nevertheless, we are not concerned with whether Noyce could have raised the issue in a direct appeal. Instead, the focus now is on whether counsel's alleged advice

11

about Noyce's right to appeal, if proven true, is a significant factor in evaluating manifest injustice. See *White*, 308 Kan. at 508 ("[W]e agree with the panel that [movant's] reason for the delayed filing, if true, would support concluding he asserted persuasive reasons or circumstances that would be a significant factor in evaluating the totality of the circumstances.").

Under the totality of the circumstances, advising Noyce that the agreed-upon sentence was not appealable does not rise to the level of being obviously unfair or shocking to the conscience. Noyce was facing the death penalty without his plea agreement. *Vontress* clarified that its list of factors was nonexclusive; accordingly, the fact that Noyce's counsel negotiated an agreement to avoid the death penalty is a significant factor. In essence, defense counsel bought his client's life with the offer to plead guilty to two consecutive hard 40 life sentences. An appeal overturning the plea agreement could bring back the possibility that the State could kill Noyce. Consequently, the argument that Noyce did not appeal his agreed upon sentence because of faulty advice from counsel or inadequate notice from the court is suspect, at best. It is more likely that he did not appeal the mutually agreed upon sentence because he wanted to live.

Indeed, it is telling that Noyce's 60-1507 motion did not ask to withdraw his plea to the first-degree premeditated murder charge and did not ask for a remand to disturb the plea agreement. He asked that all of his convictions be vacated with prejudice. Pointedly, Noyce does not explain how he could have sought that remedy in a direct appeal.

Likewise, the panel's assessment of the multiplicity issue fails to take into consideration the totality of the circumstances. The panel ruminated on whether trial counsel was ineffective for not informing Noyce of a multiplicity problem with his first-degree murder conviction. *Noyce II*, 2017 WL 3112821, at *9-10. Noyce's claim was that, since the capital defender's office successfully argued the multiplicity issue in *Scott*,

12

it was unconstitutionally ineffective for that office to fail to raise the issue in his case before Noyce pled to multiplicitous murder charges. That argument is unpersuasive on multiple levels.

First, as the State points out, the multiplicity argument by Scott's trial counsel was unsuccessful; the efficacy of the argument would not be determined until this court handed down the *Scott* decision some nine years after Noyce pled. *Noyce II*, 2017 WL 3112821, at \*10. Trial counsel should not be labeled unconstitutionally deficient for failing to divine that a losing argument in the trial court would be transformed into a winner years later by an appellate court.

Next, the version of the multiple prosecutions statute applicable to Scott, K.S.A. 21-3107 (Furse 1995), was not applicable in this case. See *Scott*, 286 Kan. at 68. Counsel for Scott had based his multiplicity argument on the "necessarily proved" language of K.S.A. 21-3107(2)(d) (Furse 1995), which was deleted from the statute effective July 1, 1998, some two months prior to the double homicide at issue here, which took place in September 1998. L. 1998, ch. 185, § 1. Statutorily, then, Noyce's trial counsel could not have made the precise argument that was made in Scott's trial.

Finally, and most importantly, Scott did not voluntarily enter into a plea agreement to avoid a death sentence. To the contrary, a jury convicted Scott of capital murder and sentenced him to death. *Scott*, 286 Kan. at 61. In a jury trial scenario, there is no downside to defense counsel filing motions based on previously unsuccessful legal theories. Not so when counsel is attempting to secure certainty for his or her client through a favorable plea agreement with the prosecutor. Moreover, based on his guilty plea, Noyce admitted that he killed his wife and two-year-old son by setting fire to a residence. See *Beauclair v. State*, 308 Kan. 284, 296, 419 P.3d 1180 (2018) (reasoning guilty plea admits all of the facts underlying the criminal charge). Consequently, the

defense would be expected to have to make a substantial offer to take the death penalty out of consideration.

Nevertheless, the Court of Appeals held that Noyce had raised "a colorable claim of ineffectiveness *that implicates the potential reversal of his premeditated murder conviction*." (Emphasis added.) *Noyce II*, 2017 WL 3112821, at *10. Apparently, the Court of Appeals did not consider the impact of such a reversal on the plea bargain that had saved Noyce's life. As the United States Supreme Court reasoned in *Padilla v. Kentucky*, 559 U.S. 356, 372-73, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), "[t]hose who collaterally attack their guilty pleas lose the benefit of the bargain obtained as a result of the plea." Therefore, if Noyce were successful in withdrawing his plea to the premeditated murder charge, he may ultimately receive "a *less favorable* outcome . . . , whereas a collateral challenge to a conviction obtained after a jury trial has no similar downside potential." 559 U.S. at 373; see also *State v. Rodriguez*, 254 Kan. 768, 775, 869 P.2d 631 (1994) ("If indeed the trial judge misinformed Rodriguez of the consequences of his plea, Rodriguez can have the plea set aside as not voluntarily and intelligently made. This, of course, would expose him to trial on the other five felonies dismissed under his plea bargain."); cf. *State v. Ceretti*, 871 N.W.2d 88, 97 (Iowa 2015) ("If we were simply to sever Ceretti's sentence for attempted murder, defendants might be motivated to enter plea agreements quietly—even if they have double punishment concerns—and then appeal them to obtain a more lenient sentence.").

There is some precedent, however, for precluding the State from rescinding the remainder of the plea agreement. Compare *United States v. Barron*, 172 F.3d 1153, 1155, 1157-58 (9th Cir. 1999) (holding district court does not have the authority to set aside entire plea agreement and return the parties to their pre-plea agreement position when district court vacated habeas petitioner's conviction and sentence based on later Supreme Court precedent rendering evidence of conviction insufficient; appropriate remedy was to

14

resentence on remaining counts), with *United States v. Lewis*, 138 F.3d 840, 842-43, 842 n.3 (10th Cir. 1998) (holding district court has authority to vacate entire plea agreement when a conviction that is part of the plea package is vacated in habeas action based on later Supreme Court precedent rendering evidence of conviction insufficient), and *United States v. Sternberg*, 5 Fed. Appx. 806, 809 (10th Cir. 2001) (unpublished opinion) ("Despite [movant's] contentions, we are not required to follow the Ninth Circuit's final decision in *Barron* as it represents nonbinding, nonprecedential authority, which this circuit is not required to follow."). See generally *State v. Boley*, 279 Kan. 989, 994-98, 113 P.3d 248 (2005) (holding in a direct appeal, upon remand for resentencing pursuant to *State v. McAdam*, 277 Kan. 136, 83 P.3d 161 [2004], the State was not released from its obligations to abide by plea agreement under the frustration of purpose doctrine). But the choice of whether to take that risk should belong to the person who would be facing the death sentence, not a panel of the Court of Appeals. To reiterate, Noyce did not ask to withdraw his plea or to remand for a trial; he asked to have all of his convictions simply vacated with prejudice.

Perhaps more fundamentally, Noyce's claim that his counsel's performance was deficient in failing to challenge the multiplicity of the two murder charges, even if true, was not enough for him to get relief. He had to show that he was prejudiced by that performance. See *State v. Morris*, 298 Kan. 1091, 1103-04, 319 P.3d 539 (2014) ("When a defendant seeks to withdraw a plea, he or she must show that, but for counsel's unreasonably deficient performance, the defendant would not have entered a plea but would have insisted on going to trial.").

Even if Noyce's counsel would have successfully asserted a multiplicity claim in the district court, he could have received the exact same sentence to which he agreed. The State could have amended the charging document from charging one first-degree premeditated murder and one capital murder to charging two first-degree premeditated

15

murders, one for each victim. Under then applicable law, Noyce would have been amenable to receiving the two, consecutive hard 40 life sentences to which he agreed. See *State v. Brady*, 261 Kan. 109, 110-20, 929 P.2d 132 (1996) (holding double jeopardy not violated when defendant, initially charged with two capital murders for murdering two people in one setting, pled guilty to two counts of premeditated first-degree murder and district court sentenced defendant to consecutive hard 40 sentences under K.S.A. 21-4635 [Furse 1995], K.S.A. 21-4636(b), (f) [Furse 1995], and K.S.A. 21-4638 [Furse 1995]); see also *State v. Jamison*, 269 Kan. 564, 577, 7 P.3d 1204 (2000) ("It does not violate double jeopardy to apply the same aggravating factor—that the defendant killed more than one person—to both [first-degree murder] convictions in imposing the hard 40 sentence on each count or in running those terms consecutively."). In other words, if Noyce's trial counsel's multiplicity motion had not caused the State to withdraw its plea offer, it would have most certainly caused the State to require the defense to agree to the aforementioned amendment to effect the same agreed-upon sentence.

Consequently, the claim that, if Noyce had known of the multiplicity issue, he would have rejected the plea agreement and insisted on going to jury trial to face the death penalty is simply unpersuasive. Cf. *State v. Sanchez-Cazares*, 276 Kan. 451, 458, 78 P.3d 55 (2003) ("Given the potential for the death penalty and given the substantial evidence against him . . . trial would have contained considerable risk. Under these facts, a reasonable person could have concluded Sanchez-Cazares would not have insisted on going to trial."). In short, there is nothing here in the performance of Noyce's trial counsel that is obviously unfair or that shocks the conscience. Noyce failed to establish manifest injustice.

In sum, we reverse the Court of Appeals' decision remanding Noyce's case for an evidentiary hearing and affirm the district court's summary denial of Noyce's motion.