NOT DESIGNATED FOR PUBLICATION

No. 127,163

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JEREMY L. HERNANDEZ,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; DANIEL D. CREITZ, judge. Submitted without oral argument. Opinion filed September 5, 2025. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., CLINE and COBLE, JJ.

PER CURIAM: Jeremy L. Hernandez appeals the Montgomery County District Court's order denying his motion for habeas corpus relief under K.S.A. 60-1507. The district court ruled that Hernandez' motion was untimely, notwithstanding the deficient representation by postconviction retained counsel, and that Hernandez had not established a manifest injustice warranting tolling the filing limitation for eight years. On a thorough examination of the record, we affirm the district court's ruling.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2004, a jury convicted Hernandez of committing the first-degree murder of Tina Davidson on November 26, 1995.

*Direct Criminal Proceedings*

Initially, law enforcement had few leads in the murder investigation. Eight years after the murder, Hernandez was arrested for a different crime, and he was required to submit a DNA sample. His DNA was compared to DNA retained in a database and matched to DNA extracted from blood collected at the murder scene that did not belong to Davidson. *State v. Hernandez*, 284 Kan. 74, 76, 159 P.3d 950 (2007).

During his subsequent police interview, Hernandez initially told the police that he did not know Davidson and denied ever visiting her home. But, at trial, Hernandez' account shifted, and he told the jury that he gave Davidson a ride home after finding her stranded on the side of the road. Davidson allegedly invited Hernandez into her home for a drink. While Hernandez and Davidson were talking in her kitchen, another man entered the house, became angry, and aggressively confronted Hernandez, cutting his hand with a knife. When Davidson tried to calm the man, he turned on Davidson, and Hernandez left the house. Hernandez learned from friends about two weeks later that Davidson had been murdered. Hernandez did not tell the police about the man who allegedly confronted him at any point before his trial. 284 Kan. at 77.

Still, Hernandez' account of the murder was substantially undermined by his wife's testimony. She reported that, before they were married, Hernandez told her that he had been involved in a murder in Independence. He told her that he had "'driven a friend to someone's house, and he [the defendant] had sat and watched while [his friend] killed [a woman].'" 284 Kan. at 78. Hernandez' wife further testified that he told her that nothing

came of the murder investigation because the police lacked evidence. 284 Kan. 78. Later, in his own trial testimony, Hernandez acknowledged the conversation but said that he believed his wife had not been listening to him. 284 Kan. at 78.

Though presented with a lesser included offense of second-degree murder, the jury convicted Hernandez of premeditated first-degree murder. On January 4, 2005, the court sentenced Hernandez to serve life in prison without the possibility of parole for 40 years (hard 40). Hernandez appealed his conviction to the Kansas Supreme Court. Although the court concluded that Hernandez had established some errors in his trial, the court affirmed the conviction, finding the evidence of Hernandez' guilt to be overwhelming. 284 Kan. at 96-98.

> "The State's case against the defendant did not turn on the fact that the defendant remained silent after he was charged with the crime. Instead, it was based on a number of pieces of evidence, including the fact that his DNA matched that of the trail of blood drops found surrounding Davidson's body and leading from her residence, that he provided inconsistent statements to the police officers, and that he had acknowledged his participation in Davidson's murder to his wife, then fiancée, Jessica Hernandez. Jessica testified that the defendant had asked her at one time whether she 'knew what a lot of blood smelled like.' She stated that he then told her that he had been involved in a murder of a woman in Independence, had driven to the woman's house, and watched as his friend 'cut up' the victim. She also explained that the defendant had told her that the case had remained unclosed because the police 'didn't have evidence and it just couldn't be solved.' This testimony, provided by the defendant's wife, is in sharp contrast to the innocent story provided by the defendant. Moreover, as the previous discussion demonstrates, the prosecutor's comments concerning the fact that the defendant did not come to the police with his story in the 8 years between Davidson's murder and the time he was charged *were* admissible to impeach the credibility of the defendant's testimony under *Jenkins* [*v. Anderson*, 447 U.S. 231, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980)]." *Hernandez*, 284 Kan. at 95-96.

Hernandez applied for writ of certiorari to the United States Supreme Court, but his application was denied on November 13, 2007. *Hernandez v. Kansas*, 552 U.S. 1025, 128 S. Ct. 620, 169 L. Ed. 2d 399 (2007).

*Postconviction Procedural History*

On August 13, 2018, Hernandez filed a motion under K.S.A. 60-1507, accompanied by an affidavit explaining the filing delay and a memorandum in support of his motion. The district court appointed Hernandez an attorney, Daniel Reynolds, who filed a motion to extend the filing limitation deadline, based on the alleged deficient representation of Hernandez' retained postconviction attorney, Bradley P. Sylvester. The district court held a limited evidentiary hearing on the quality of Sylvester's representation and the timeliness of Hernandez' motion. At the hearing, the parties presented relatively uncontroverted evidence about Sylvester's representation and Hernandez' conduct following the termination of that representation.

After the Kansas Supreme Court affirmed his conviction, Hernandez and his family decided to pursue a habeas corpus action under K.S.A. 60-1507 and retained Sylvester for that purpose. Sylvester initially accepted a check for $5,000 as a retainer. While Sylvester did not recall when Hernandez' family first approached him, he testified that the family members contacted him in 2008, and the retention check was dated February 22, 2008.

Sylvester investigated Hernandez' case by speaking with the family, communicating with Hernandez by phone, reviewing the trial record, and speaking with Hernandez' trial attorney. But Sylvester did not file a habeas corpus motion on Hernandez' behalf.

In conducting his own legal research, Hernandez discovered that a habeas corpus motion under K.S.A. 60-1507 was subject to a one-year limitation. Hernandez contacted his father about the limitation, and in turn, his father contacted Sylvester. Sylvester acknowledged the one-year limitation but informed Hernandez' father that the case lacked merit.

On September 17, 2009, Sylvester drafted a letter to Hernandez, declining further representation in the habeas corpus proceeding and detailing Sylvester's opinions about the lack of colorable claims in Hernandez' case. Sylvester then returned the $5,000 Hernandez' family had paid to retain him. Sylvester did not recall that he advised Hernandez about the possibility of filing a late motion on a showing of manifest injustice, and that possibility does not appear in the letter.

At the evidentiary hearing on his present K.S.A. 60-1507 motion in November 2020, Hernandez claimed that he presented an inmate grievance request form (Form 9) to Kansas Legal Services for Prisoners (KLSP) about his possible remedies a "couple months" after Sylvester declined representation. He claims that the prison legal services told him that he had no remedy. When the State subpoenaed Hernandez' filings from the prison, however, the prison provided only a Form 9 submitted on October 10, 2016. This Form 9 did not address the timeliness of Hernandez' K.S.A. 60-1507 motion but questioned the legality of the hard 40 sentence because the jury did not make the findings necessary to enhance the life sentence with imposition of the hard 40. No other Form 9 is included in the record.

According to Hernandez, he did not pursue a late K.S.A. 60-1507 motion for habeas corpus relief because he was unaware of the manifest injustice exception until he was transferred from Lansing Correctional Facility to Ellsworth Correctional Facility and met an inmate that advised him of the statutory exception. Still, a few years before he filed his current motion, "five [or] six years" after Sylvester's final letter, Hernandez

5

requested his criminal case file from his trial attorney. Hernandez claimed that he requested the file simply because he did not trust his trial attorney.

Following the evidentiary hearing on Hernandez' motion for habeas corpus relief under K.S.A. 60-1507, in a lengthy written opinion, the district court concluded that Hernandez' motion was untimely and that he had not demonstrated manifest injustice. While the court concluded that Sylvester provided deficient representation by failing to file a motion within the 1-year limitation, Hernandez failed to file his own motion for another 10 years. In rejecting Hernandez' arguments for manifest injustice, the district court specifically found Hernandez' explanations for the delay were not credible.

Hernandez appeals.

### THE DISTRICT COURT DID NOT ERR IN REFUSING TO FIND A MANIFEST INJUSTICE PERMITTING CONSIDERATION OF HERNANDEZ' UNTIMELY MOTION

K.S.A. 60-1507 provides a civil procedure for challenging the legitimacy of a criminal conviction or sentence on constitutional grounds. K.S.A. 2018 Supp. 60-1507(a). A district court has three options when handling a K.S.A. 60-1507 motion:

> "'"(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.'" [Citations omitted.]" *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020).

In short, when the district court considers evidence and makes factual findings, those findings are entitled to deference if they are supported by substantial competent

6

evidence. But the ultimate conclusions regarding the district court's disposition of the issues raised within the motion are questions of law subject to unlimited appellate review. See *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

A prisoner seeking habeas corpus relief under K.S.A. 60-1507 must file his or her claims within one year from the date the criminal conviction became final. K.S.A. 2018 Supp. 60-1507(f)(1). The parties concur that the one-year limitations period commenced for Hernandez when the United States Supreme Court denied his application for writ of certiorari on November 13, 2007. See K.S.A. 2018 Supp. 60-1507(f)(1)(B) ("Any action under this section must be brought within one year of: . . . the denial of a petition for writ of certiorari to the United States [S]upreme [C]ourt or issuance of such [C]ourt's final order following granting such petition."). Consequently, Hernandez had until November 13, 2008, to file a timely motion for habeas corpus relief under K.S.A. 60-1507. The parties also do not dispute that Hernandez did not file his habeas corpus motion until August 13, 2018.

The one-year limitation may be extended by the district court only to prevent a manifest injustice. K.S.A. 2018 Supp. 60-1507(f)(3) ("If the court . . . determines the time limitations under this section have been exceeded and that the dismissal of the motion would not equate with manifest injustice, the district court must dismiss the motion as untimely filed."). Because Hernandez filed his K.S.A. 60-1507 motion after July 1, 2016, the legislative definition of "manifest injustice" applies. See *Sherwood v. State*, 310 Kan. 93, 100, 444 P.3d 966 (2019).

> "[(f)](2) The time limitation herein may be extended by the court only to prevent a manifest injustice.
>
> (A) For purposes of finding manifest injustice under this section, the court's inquiry shall be limited to determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence. As used herein, the term actual innocence requires the prisoner to show it is

more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2018 Supp. 60-1507(f)(2).

Summarized, the statute allows a district court to consider an untimely habeas corpus motion under K.S.A. 60-1507 when the movant demonstrates one of two possibilities: (1) either a legitimate reason for being unable to file the motion within the one-year limitations period (excusable delay), or (2) when the movant presents a colorable claim for actual innocence. Because the district court addressed both bases in denying Hernandez' claim, both will also be considered here.

Whether a K.S.A. 60-1507 movant has established manifest injustice depends on the totality of the circumstances. *Noyce v. State*, 310 Kan. 394, 399-400, 447 P.3d 355 (2019). The movant bears the burden of establishing that application of the one-year limitation constitutes a manifest injustice. *State v. Kingsley*, 299 Kan. 896, 900, 326 P.3d 1083 (2014). Without a showing of manifest injustice, a district court must dismiss a K.S.A. 60-1507 motion as untimely if, after inspection of the files, and records of the case, the court determines the time limitation has lapsed. K.S.A. 60-1507(f)(3); see *State v. Trotter*, 296 Kan. 898, 905, 295 P.3d 1039 (2013) (finding the motion procedurally barred when movant presented no argument for manifest injustice).

1. *Excusable Delay*

One basis for alleging a manifest injustice warranting the tolling of the one-year limitation is a legitimate excuse for failing to file within the prescribed time period. Hernandez has alleged that he missed the filing deadline because of Sylvester's ineffective assistance of counsel. Ineffective assistance of counsel, once established, is a valid excuse for missing a filing deadline that will toll a limitations period. See *Penn v. State*, 38 Kan. App. 2d 943, 947-48, 173 P.3d 1172 (2008); *Pouncil v. State*, No. 98,276, 2008 WL 2251221, at *6 (Kan. App. 2008) (unpublished opinion) ("Where a timely

pursuit of statutory appeal rights has been frustrated by the incompetent representation of counsel, a manifest injustice would result from the application of a procedural bar to a subsequent attempt to remedy the lost appeal right.").

A prisoner seeking habeas corpus relief under K.S.A. 60-1507 has a limited statutory right to counsel. Because of that statutory right, the prisoner is entitled to effective representation. See *Robertson v. State*, 288 Kan. 217, 227, 201 P.3d 691 (2009). Courts considering a claim of ineffective assistance of habeas corpus counsel apply the two-part analysis from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See *Robertson*, 288 Kan. at 228-32.

To establish relief because of ineffective assistance of counsel, a movant must show first that counsel's representation fell below an objective standard of reasonable assistance and then that the deficient representation prejudiced the movant's 1507 proceedings. *Strickland*, 466 U.S. at 687.

Here, Sylvester provided objectively deficient representation by failing to do anything towards Hernandez' habeas corpus motion and allowing the one-year limitation to lapse before communicating with Hernandez that he did not wish to pursue the representation. Hernandez has established prejudice, then, through his reliance on counsel who failed to file his motion within the applicable period. This showing is sufficient to warrant application of the excusable-delay component of manifest injustice to toll the one-year limitations period.

Even so, a valid excuse for a late filing does not entitle a movant to an unlimited amount of time to bring the motion. Although the movant is entitled to a reasonable amount of time from the discovery of counsel's representational deficiencies to bring the motion under the excusable-delay component of manifest injustice, we note our court's decisions finding that this reasonable amount of time cannot exceed another year. See

9

*Rowell v. State*, 60 Kan. App. 2d 235, 241, 490 P.3d 78 (2021) ("We adopt that approach here and find that Rowell's one-year period for filing a second 60-1507 to challenge his counsel's representation in his first 60-1507 proceeding began when the mandate issued on that first 60-1507 motion. To do otherwise would deprive a movant of any way to raise a claim of ineffective assistance of 60-1507 counsel."); *Ray v. State*, No. 105,548, 2012 WL 309089, at *3 (Kan. App. 2012) (unpublished opinion) ("Our court has considered cases similar to Ray's and has twice concluded that an untimely request for habeas review would not be considered when there was a considerable delay in seeking review based on an attorney's failure in an earlier habeas action to file a timely petition for review in the Kansas Supreme Court."); *State v. Cox*, No. 104,292, 2011 WL 6382755, at *3-4 (Kan. App. 2011) (unpublished opinion) (finding no manifest injustice to excuse time limit given unexplained, three-year delay in seeking habeas review of attorney's error); *Pouncil*, 2008 WL 2251221, at *7 (considering timeliness of manifest injustice claim in determining the propriety of relief).

Under these facts, though the exact date of Hernadez' receipt of Sylvester's letter is unknown, it was presumably only a week or two after Sylvester drafted it on September 17, 2009. Therefore, the court could reasonably provide Hernandez until approximately mid-October 2010 to file a motion after his counsel missed the original filing deadline. But Hernandez did not file his motion for nearly eight years after this secondary deadline. Without further excuse for the additional, significant delay, Sylvester's failure to file Hernandez' motion and then declining further representation does not meet the excusable-delay component of manifest injustice.

In his affidavit and at the hearing, Hernandez contended that he was unaware of the manifest injustice exception to the one-year limitation. The district court, however, did not lend this assertion credence. The district court concluded that Hernandez could not properly rely on the response he received from KLSP because the response had nothing to do with Hernandez' habeas corpus proceeding and only responded to his

10

inquiry about the legality of his hard 40 sentence. Moreover, Hernandez had already discovered the one-year limitation in his own legal research in 2009. The district court did not find it credible to believe that Hernandez was aware of the one-year limitation but not the manifest injustice exception when the two are almost inextricably linked, both in the language of K.S.A. 60-1507(f) and in the caselaw applying the limitation. See, e.g., *State v. Johnson*, 320 Kan. 251, 252, 564 P.3d 1271 (2025) (discussing one-year limitation and manifest injustice exception in the same sentence); *State v. Brown*, 318 Kan. 446, 447, 543 P.3d 1149 (2024) (same); *Quinn v. State*, 317 Kan. 624, 626, 537 P.3d 94 (2023) (same). This court must accept the credibility findings of the district court in reviewing the denial of a habeas corpus petition after an evidentiary hearing. *Beauclair v. State*, No. 123,671, 2022 WL 17546264, at *3 (Kan. App. 2022) (unpublished opinion) (discussing rationale behind appellate court deference to district court credibility determinations).

Besides—as the district court noted—even if Hernandez was unaware of the manifest injustice exception, this ignorance of the law does not excuse the unreasonable delay. In countless cases, Kansas appellate courts have refused to toll the one-year limitation because of a prisoner's ignorance of the limitation. See, e.g., *In the Matter of Bell*, 317 Kan. 334, 340, 529 P.3d 153 (2023) ("'[M]ere ignorance of the law is not a basis for equitable tolling of a statute of limitations, even for pro se prisoners.'"); *Thomas v. State*, No. 127,562, 2025 WL 502483, at *1 (Kan. App. 2025) (unpublished opinion) ("We have consistently recognized that ignorance of the law does not constitute manifest injustice that would excuse an untimely 60-1507 motion."). Hernandez' argument is not substantially removed from the arguments of other prisoners that these opinions rejected, as he claims his ignorance of the law prevented him from bringing his manifest injustice claim within a reasonable amount of time after he learned of Sylvester's deficient representation.

11

In short, Hernandez' claim of ineffective assistance of Sylvester's representation in failing to file his habeas corpus motion constitutes a second violation of the time limitation. To timely file his K.S.A.60-1507 motion, Hernandez first had an initial one-year period from the date the United States Supreme Court denied his writ of certiorari—November 13, 2007. *Hernandez v. Kansas*, 552 U.S. 1025, 128 S. Ct. 620, 169 L. Ed. 2d 399 (2007). See K.S.A. 2018 Supp. 60-1507(f)(1)(B). He had a second one-year period from the date he learned that Sylvester had not prosecuted his habeas corpus claims—around September 17, 2009. See *Cox*, 2011 WL 6382755, at *3-4; *Pouncil*, 2008 WL 2251221, at *7 (considering timeliness of manifest injustice claim in determining the propriety of relief). Hernandez failed to file his motion, along with his claim for manifest injustice based on Sylvester's deficient representation, within a year of notice that Sylvester would not be filing a motion on his behalf. The district court properly concluded that Hernandez' motion was untimely and that the excusable-delay component of manifest injustice did not warrant tolling of the statutory limitation period.

2. *Actual Innocence*

While Hernandez focused much of his manifest injustice argument on Sylvester's legal representation, he also contended—in his K.S.A. 60-1507 motion—that his claims demonstrate a denial of fundamental rights supporting a claim of actual innocence, warranting a finding of manifest injustice under the second prong of K.S.A. 2018 Supp. 60-1507(f)(2)(A). The district court devoted minimal analysis to this claim, essentially rejecting it based on the overwhelming evidence of Hernandez' guilt presented during the trial and our Supreme Court's notation that the evidence was, in fact, overwhelming. *Hernandez*, 284 Kan. at 96.

On appeal, Hernandez does not use the words "actual innocence" at all. But, he does claim that "of all [his] claims, the one most entitled to an evidentiary hearing was

12

that that he was denied his Sixth Amendment right to effective counsel when [trial counsel] failed to investigate and subpoena crucial witnesses."

A successful claim of actual innocence does not have a timeliness component. See *McQuiggin v. Perkins*, 569 U.S. 383, 399, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013) (rejecting the notion of a diligence component to an actual innocence claim under federal habeas corpus statutes); *Mullins v. State*, No. 108,713, 2013 WL 5976060, at *4 (Kan. App. 2013) (unpublished opinion) (following reasoning of *McQuiggin*). Accordingly, Hernandez is not barred by the extensive delay in bringing his motion for habeas corpus relief if he can establish manifest injustice through a colorable claim of actual innocence.

Claims of actual innocence may be either substantive or procedural. In a substantive innocence claim, the movant presents new evidence that he or she is actually innocent of the crime of conviction, "'even if the proceedings that had resulted in his conviction and sentence were entirely fair and error free.'" *Beauclair v. State*, 308 Kan. 284, 297-98, 419 P.3d 1180 (2018) (quoting *Schlup v. Delo*, 513 U.S. 298, 314, 115 S. Ct. 851, 130 L. Ed. 2d 808 [1995]). In a procedural innocence claim, also called a "'gateway'" claim, a movant claims that he or she was denied the full panoply of protections afforded to criminal defendants by the Constitution, rendering the resulting conviction suspect. 308 Kan. at 298-99 (quoting *Schlup*, 513 U.S. at 315).

It appears that Hernandez' innocence claim, as presented in his original motion and minimally offered on appeal, is a procedural one. Procedural claims of actual innocence are used as a gateway for courts to consider K.S.A. 60-1507 claims that are procedurally barred, like this one that is untimely. *Beauclair*, 308 Kan. at 304; see *Skaggs v. State*, 59 Kan. App. 2d 121, 146, 479 P.3d 499 (2020). And, his claim is largely that his trial counsel was ineffective for failing to investigate and subpoena crucial witnesses, which renders his conviction invalid. See *Beauclair,* 308 Kan. at 298-99 (citing *Schlup*, 513 U.S. at 315).

13

But, in resolving the actual innocence component of Hernandez' manifest injustice showing, the district court addressed only substantive innocence. The court concluded: "Here, based on a review of the entire record, including the trial record and *Hernandez*, as the Supreme Court found the evidence was overwhelming against the (petitioner), *Hernandez*[, 284 Kan.] at 96. Thence, the petitioner does not make a colorable claim of actual innocence."

A substantive actual innocence claim—as described by the United States Supreme Court in *Herrera v. Collins*, 506 U.S. 390, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993), our Supreme Court in *Beauclair*, and a panel of this court in *Skaggs*—is one "in which a movant asserts a substantive claim of actual innocence —e.g., arguing that newly discovered evidence establishes a movant is actually innocent and requires a new trial. The most familiar *Herrera* claims are those in which DNA testing leads to exoneration of the applicant. [Citations omitted.]" *Skaggs*, 59 Kan. App. 2d at 135 (citing *Herrera*, 506 U.S. 390; *Beauclair*, 308 Kan. at 295-99). Again, a substantive innocence claim is one in which the movant claims he or she is actually innocent despite a fair and error-free trial which resulted in a guilty verdict.

But such is not Hernandez' claim. Hernandez is not suggesting his trial was free of error. Rather, he maintains that errors during his trial—that is, his trial counsel's ineffectiveness—resulted in certain evidence being withheld from the jury. And he argues that his assertions in his motion alone were enough to require a full evidentiary hearing.

Our Supreme Court has found such arguments "untenable." *Beauclair*, 308 Kan. at 302. In order to be awarded an evidentiary hearing on a gateway claim of actual innocence, a movant must meet a higher benchmark than that which would suffice on an otherwise timely motion. As the Supreme Court explained in *Beauclair*, "[t]he practical result of this court adopting [Hernandez'] position would be evisceration of the one-year time limit. Every late K.S.A. 60-1507 motion could allege actual innocence on the

14

movant's word alone as a gateway to consideration of the motion's merits." 308 Kan. at 302.

However, "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the *new* evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." (Emphasis added.) *Schlup*, 513 U.S. at 329; K.S.A. 2024 Supp. 60-1507(f)(2)(A) (requiring the movant to show "it is more likely than not that no reasonable juror would have convicted the prisoner in light of *new* evidence" [Emphasis added.]).

As was done here, the district court assesses the "probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Schlup*, 513 U.S. at 331-32. In doing so, "the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." 513 U.S. at 332.

In our review, we first note the lack of sufficient briefing through which we consider Hernandez' claim. One paragraph in his brief suggests a possible procedural gateway claim of innocence, with a string citation to several cases but without briefing any of the legal standards for a gateway innocence claim and without tying those standards to the information Hernandez believes supports his claim. *State v. Trass*, 319 Kan. 525, 547, 556 P.3d 476 (2024) (raising a point incidentally but failing to support the point with adequate argument is deemed waiver of the issue). Even if we ignore the lack of briefing and consider his assertions, given our de novo review of his claim, we evaluate the two pieces of evidence he offers on appeal which he claims entitle him to an evidentiary hearing. We deem any other claims raised in his motion waived or abandoned for lack of adequate briefing. *State v. Ballard*, 320 Kan. 269, 275, 566 P.3d 1092 (2025).

15

First, he references his own trial testimony claiming his blood was found at the crime scene only because he had an altercation with a man named William Webb. He claims another man named Jim Goza was willing to testify that Goza had seen Webb at a local bar showing people a knife that Webb said was the murder weapon used to kill Tina Davidson. Second, he alleges that in January 2004, Nadine Marshall, the victim's grandmother, wrote to the then-attorney general and the local prosecutor, detailing that the victim had said that she was being stalked, possibly by some friends of her ex-husband, and that her ex-husband's child support had been increased just before the murder. The letter also included that another family member saw deep scratches on the ex-husband's face right after the murder.

Although Hernandez' counsel may not have brought out some of these details during trial, none of the information Hernandez presents is "new" for the sake of a gateway claim of innocence. First, he admits he testified to the altercation with Webb during trial, so the jury was able to assess his explanation for the presence of his DNA at the scene at that time. As for the information regarding Goza's willingness to testify, Hernandez provided no affidavit, either from himself or from Goza, to support that claim. Further, the Marshall letter was written well before trial, and Hernandez admits that it was likely turned over to his defense attorney as part of discovery. And, in fact, the Marshall letter contains a segment noting that she was "sure Jeremy Hernandez is very very guilty also in Tina's murder and there could be more [than just Jeremy] . . . [and] Jeremy must pay for his part in this murder . . . ." So, without delving into the merits of the ineffective assistance claim, there could be a reason why trial counsel opted not to rely upon the letter as exculpatory evidence.

In evaluating Hernandez' actual innocence argument, the district court was to consider this "new" evidence along with the evidence of guilt presented at trial, including the likely credibility of the affiants and the timing of the submission of the "new" evidence. *Schlup*, 513 U.S. at 331-32. Despite the cursory manner in which the court

16

explained its reasoning on that point, it appears the court did just that, explaining that it considered its "review of the entire record, including the trial record," our Supreme Court's findings on the evidence at trial, as well as the district court's own consideration of Hernandez' K.S.A. 60-1507 arguments. And, here we have no affiant aside from Hernandez on the first point regarding his altercation with Webb, which weakens his claim; and the Marshall letter is not only something that was available before trial—and so is not "new"—but it is also not altogether exculpatory. Given these weaknesses in the evidence Hernandez now presents, and the strength of the evidence at trial—Hernandez' DNA found at the crime scene, his inconsistent statements, and the damning testimony of his wife—we cannot say the district court erred in its assessment.

3. *Rule 183*

We must also address Hernandez' claim that the district court failed to make explicit findings of fact and conclusions of law regarding each of the movant's specific issues, as required by Kansas Supreme Court Rule 183(j) (2025 Kan. S. Ct. R. at 238). Hernandez argues that the district court's journal entry was boilerplate, stating only that the motions, files, and records of the case did not show manifest injustice, and that the movant's conclusory allegations did not entitle him to relief; and because it was boilerplate, the decision did not comply with Rule 183(j). See *Stewart v. State*, 30 Kan. App. 2d 380, 381-82, 42 P.3d 205 (2002). We must disagree.

Despite the district court's limited explanation of its consideration of the probative value of the "new" evidence Hernandez presented in comparison with the evidence admitted at trial, there is no doubt the district court thoroughly considered this case. The district court's journal entry describes the process by which it examined the record, including rereading trial transcripts and explaining how it "toiled with this decision" yet ultimately found the record to be complete, requiring no additional hearings. Its journal entry outlines the evidence presented at trial, the allegations in Hernandez' K.S.A. 60-

17

1507 motion, and the history of his representation by Sylvester, including the evidence produced at the limited evidentiary hearing. In its 24-page journal entry, the district court took great pains to address Hernandez' arguments, and in many cases, found Hernandez' assertions to lack credibility—a finding left to the district court. *Khalil-Alsalaami*, 313 Kan. at 486-87.

But the district court found that

"the factual arguments made by the petitioner in his K.S.A. § 60- 1507 petition were known to him at the time of his conviction. Second, the delay in raising these arguments was unreasonable. While Sylvester did not file the petition within the statutory deadline, the petitioner waited nearly nine (9) years between September 17, 2009, and August 13, 2018, to file his *pro se* pleading."

Ultimately, the district court concluded that Hernandez failed to show manifest injustice as required in order for his untimely claim to proceed.

If, taken together, the district court's findings and conclusions in the journal entry and its oral expressions at the time of the hearing are sufficient for an appellate court to discuss and act on movant's arguments, then remand is not required. *Phillips v. State*, 282 Kan. 154, 178, 144 P.3d 48 (2006); see *Robertson*, 288 Kan. at 233. Here, on review of the entirety of the journal entry, we find the district court's findings and conclusions more than sufficient to comply with Supreme Court Rule 183(j).

4. *Conclusion*

Hernandez' K.S.A. 60-1507 motion was at least eight years too late, and his explanation for the delay is insufficient. He must then rely on his gateway claim of innocence. When a movant relies on a gateway claim of innocence, he or she is entitled to consideration of the merits if the claim meets the standard outlined in *Murray v. Carrier*,

477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). That is, he must have shown it is more likely than not that no reasonable juror would have convicted him. *Beauclair*, 308 Kan. at 301; K.S.A. 2024 Supp. 60-1507(f)(2)(A). For the reasons stated above, we find Hernandez has not shown it more likely than not that no reasonable juror would have convicted him; and he was not entitled to consideration of the merits of his claims because he cannot overcome the procedural barrier to his untimely motion.

Affirmed.